IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. _____ |
| v. | : | DATE FILED: _____ |
| DAVID RAY | : | VIOLATIONS: |
| | : | 18 U.S.C. § 1349 (conspiracy to commit wire and mail fraud – 1 count) |
| | | 18 U.S.C. § 1341 (mail fraud - 1 count) |
| | : | 18 U.S.C. § 1028A (aggravated identity theft - 1 count) |
| | : | Notice of forfeiture |

# **INFORMATION**

## **COUNT ONE**

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times relevant to this information:

### **INTRODUCTION**

1. Defendant DAVID RAY was a resident of Ione, California, and was employed as a manager by Company 1, where he had access to other employees' personal identification information (PII).

2. An individual known to the United States Attorney ("Person A") was a resident of Philadelphia, Pennsylvania and elsewhere.

3. An individual known to the United States Attorney ("Person B") was a resident of Philadelphia, Pennsylvania and elsewhere.

4. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) was signed into law. The CARES Act created the Pandemic Unemployment Assistance (PUA) program, which provides unemployment benefits to individuals not eligible for

regular unemployment compensation or extended unemployment benefits.

5. The PUA program was administered by the various states, including the Commonwealth of Pennsylvania, but its benefits were funded by the federal government. In Pennsylvania, the Pennsylvania Department of Labor and Industry (PA DLI) administered the PUA program, on behalf of the United States Department of Labor, which was responsible for overseeing the PUA program

6. PA DLI required that a PUA claim be made online via the PUA website, https://pua.benefits.uc.pa.gov. The applicant was required to enter PII, including name, date of birth, social security number, email address, telephone number, and a physical mailing address. An applicant was also required to answer a series of questions that enabled the PA DLI to determine the applicant's eligibility and payment amount. Once awarded PUA benefits, the applicant was required to submit weekly certifications showing continuing eligibility. While each state administered its own PUA program slightly differently, every state referenced in this indictment required that the application for PUA benefits as well as the weekly certifications be made online.

7. The application used by each state was a standard online application form. The form consisted of 27 different sections, including a range of questions within each section. Some of the questions asked for the applicant's PII and biographical information while other questions dealt with the applicant's eligibility for the program and work history. An applicant was required to provide his or her current employment status and answer whether he or she is able to accept a job if offered. If the applicant could not accept a job, the applicant was required to provide a reason for not being able to accept a job.

8. The applicant was also required to disclose whether he or she were unemployed as a result of a pandemic or major disaster. If the applicant's employment was not affected as a result of a pandemic or major disaster, the applicant was not eligible for PUA benefits. If the applicant's employment was affected by a pandemic or major disaster, the application was also required to note in which state the applicant was affected by the pandemic or major disaster and the nature of the pandemic or major disaster.

9. In the "self-certification" section of the application, the applicant was required to answer questions regarding the nature and impact of a pandemic or major disaster on the applicant's employment status. First, the applicant needed to disclose the pandemic or major disaster which affected the applicant's employment. An applicant was only eligible to receive weekly PUA benefits if the applicant was unemployed for reasons related to the COVID-19 pandemic. Second, the applicant needed to disclose the date of the applicant's last day of work. Finally, if the applicant quit their job due to COVID-19, the applicant needed to supply a reason for quitting.

10. As to all of these preceding questions, the applicant was required to "acknowledge that I understand that making the certification is under penalty of perjury and intentional misrepresentation in self-certifying that I may fall in one or more of these categories is fraud."

11. The applicant was also required to complete another certification, under penalty of perjury, that if offered a job, the applicant was able to accept it. An applicant was required to read and understand the PUA Compensation Handbook, which indicated that any earnings must be reported for each week a person works. The applicant was also required to certify

3

once again as to the application that "all information is true and complete" and that if the applicant provided false information, the applicant could be subject to criminal prosecution.

12. If PA DLI or another state's administrative agency approved an application for PUA benefits, the applicant was then eligible to receive benefits in the form of checks, electronic fund transfers, or debit cards, and the checks and debit cards were mailed via the United States Postal Service to the physical mailing address that appeared on the application. When a state agency approved an applicant's eligibility, the agency established the applicant's period of benefits, amount of weekly benefit, and maximum total benefit amount. However, even after this occurred, the applicant was not able to receive the benefits unless the applicant performed the appropriate weekly certifications.

13. The recipient of PUA benefits received a unique applicant number that corresponded to the applicant's initial application and weekly certifications. Payments for PUA were based on a seven-day period, from Sunday through Saturday. Thus, the benefits recipient was required to certify every seven days that he or she: a) was ready, willing and able to work each day; b) was seeking full time employment; c) did not refuse any job offers or referrals; and d) had reported any employment during the week and the gross pay or other payments received. The weekly certification was required to be completed in a timely manner. A delay in the weekly certification could result in a delay or denial of further payments.

**THE CONSPIRACY**

14. From on or about March 1, 2020, to on or about November 20, 2022, in the Eastern District of Pennsylvania, and elsewhere, defendant

**DAVID RAY**

4

conspired and agreed with Person A and Person B to commit wire and mail fraud, that is, to devise and intend to devise a scheme to defraud state and federal agencies, and to obtain money and property, specifically PUA benefits by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Sections 1341 and 1343.

## MANNER AND MEANS

It was part of the conspiracy that:

15. Defendant DAVID RAY provided Person A with the PII of other persons, without permission or legal authority from those persons, in order to use that PII to file fraudulent PUA applications in various states under the names of those persons.

16. At Person A's direction, defendant DAVID RAY collected identification documents from the personnel files of employees of defendant RAY's employer, Company 1, and provided that information to Person A via email.

17. Persons A and B caused to be filed fraudulent PUA applications in their own names, the name of defendant DAVID RAY and his wife, and in the names of other persons. In total, Persons A and B caused to be filed approximately 501 fraudulent PUA applications in 27 states with those states' respective work force agencies. Persons A and B used the PII of approximately 375 employees of Company 1 in approximately 375 of these applications.

18. After causing the filing of these fraudulent PUA applications, Person A and Person B caused to be filed the weekly certifications associated with the applications for PUA benefits.

19. After the respective state workforce agency to which the application was submitted issued either a check, direct deposit, or PUA debit card for payment on each application, Persons A and B cashed the issued checks, deposited the checks, received the direct deposits into bank accounts controlled by them, and collected and possessed the PUA debit card issued on the applications. Persons A and B made direct expenditures using the PUA debit cards, withdrew the money from those cards at ATMs, and transferred the money to financial accounts controlled by them. After the funds were transferred to financial accounts controlled by them, Persons A and B used those financial accounts to transfer proceeds of the fraud to accounts controlled by defendant DAVID RAY, to make purchases, and/or fund additional accounts under their control. Ultimately, these accounts funded cryptocurrency accounts controlled by Person A and B. Person A and B made hundreds of cryptocurrency purchases amounting to over approximately $350,000. In total, through these means, Persons A and B converted at least approximately $2,500,000 of the amount dispersed by the state work force agencies on false claims they submitted, and they transferred at least approximately $144,393.90 to defendant RAY for his personal use.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects, defendant DAVID RAY, Person A, and Person B, committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1. On or about June 15, 2020, defendant DAVID RAY received a text from Person A which included a photograph e of multiple PUA checks.

2. On or about October 5, 2020, defendant DAVID RAY deposited the

proceeds of a cashier's check in the amount of approximately $36,399.58 into a bank account controlled by him which check was made payable to David Ray and Person A with a listed address of Company 1. This cashier's check had been purchased with funds from a Bank of America account controlled by Person A; this account had been funded by deposits of PUA funds paid as a result of false applications made by Persons A and B.

   3. On or about October 15, 2020, defendant DAVID RAY deposited the proceeds of a cashier's check in the amount of approximately $107,994.32 into a bank account controlled by him which check was made payable to David Ray with a listed address of Company 1. This cashier's check had been purchased with funds from a Bank of America controlled by Person A; this account had been funded by deposits and transfers of PUA funds paid as a result of false applications made by Persons A and B.

   4. On or about October 15, 2020, Person A called defendant DAVID RAY to inquire about the status and transmission of additional stolen identities. During the conversation, Person A inquired as to how long it would take for defendant RAY to steal more identities from Company 1. Defendant RAY responded that he had to be careful as the identities were not all centrally located and he would have to request them from other co-workers. Defendant RAY also stated that it was more difficult to request certain identity documents for new members of Company 1. Person A reiterated that defendant RAY should be careful, but should get identities of as many others in whatever format he could.

   All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. Paragraphs 1 through 13 of Count One are incorporated here.

### THE SCHEME TO DEFRAUD

2. From on or about March 1, 2020, to on or about November 20, 2022, in the Eastern District of Pennsylvania, and elsewhere, defendant

### DAVID RAY

and Person A and Person B devised and intended to devise a scheme to defraud various state and federal agencies, and to obtain money and property, specifically PUA benefits, by means of false and fraudulent pretenses, representations, and promises.

### MANNER AND MEANS

3. Paragraphs 15 through 19 of Count One are incorporated here.

4. On or about June 25, 2020, in the Eastern District of Pennsylvania, and elsewhere, having devised and intending to devise this scheme described above, defendant

### DAVID RAY,

for the purpose of executing the scheme, knowingly caused to be delivered by United States mail or a private carrier, according to the directions thereon, a PUA debit card mailed from Gray, Tennessee, addressed to K.F. at E. Cumberland Street, Philadelphia, Pennsylvania.

In violation of Title 18, United States Code, Section 1341.

## **COUNT THREE**

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

On or about June 25, 2020, in the Eastern District of Pennsylvania, and elsewhere, defendant

## **DAVID RAY**

knowingly and without lawful authority possessed and used a means of identification of another person, that is, the name, social security number, and date of birth of K.F., during and in relation to mail fraud as charged in Count Two.

In violation of Title 18, United States Code, Sections 1028A(a)(1) and (c)(5).

## NOTICE OF FORFEITURE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

    1.    As a result of the violations of Title 18, United States Code, Sections 1341 and 1349, as set forth in this information, defendant

**DAVID RAY**

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such violations, including, but not limited to:

    (a)    the sum of $144,393.90 in United States Currency; and

    (b)    $75,300.91 in United States Currency seized from Bank of West account number xxx6757.

    2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the Court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c) incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

_____
**JACQUELINE C. ROMERO**
**UNITED STATES ATTORNEY**

No. _ _ _ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

DAVID RAY

INFORMATION

Counts

18 U.S.C. § 1349 (conspiracy to commit wire and mail fraud – 1 count)
18 U.S.C. § 1341 (mail fraud – 1 count)
18 U.S.C. § 1028A (aggravated identity theft – 1 count)

Notice of forfeiture

_____
A true bill.

_____
Foreman

Filed in open court this _____ day,
Of _____ A.D. 20 _____

_____
Clerk

Bail, $ _____