**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 23-164** |
| **DAVID RAY** | : | |

# GOVERNMENT'S SENTENCING MEMORANDUM

Defendant David Ray sold out his colleagues for love, and a hundred thousand dollars, and finds himself before this court because of it. The defendant maintained an internet relationship with co-defendant Aryanah Davison starting in 2019. After accruing considerable personal debt by sending her money, and buying her a luxury vehicle, the defendant at Davison's suggestion, sent her the identities of 375 of his co-workers from his then employer, Williams Tank Lines, hoping to be repaid. Davison and her co-defendant Ardavan Alamoutinia used these identities to fraudulently file for pandemic unemployment assistance from 27 states. Ray's actions resulted in over $2,886,000 in pandemic unemployment assistance being funded to the conspirators. Accordingly, the government recommends a sentence which is addressed in the supplemental sealed attachment to this sentencing memorandum**.**

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

---

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors**.**

## I. BACKGROUND

On May 15, 2023, the defendant pled guilty conspiracy to commit wire and mail fraud, in violation of 18 U.S.C. § 1349 (Count One); mail fraud, in violation of 18 U.S.C. § 1341 (Count Two); and aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count Three), all stemming from his participation in a conspiracy to defraud the United States, specifically by sourcing hundreds of identities of his co-workers and providing these identities to his co-conspirators who used the identities to file hundreds of fraudulent pandemic unemployment assistance applications in 27 states.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence

The maximum sentence that may be imposed on the defendant is as follows: Count One (conspiracy to commit wire and mail fraud), 20 years' imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment; Count Two (mail fraud), 20 years' imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment; and Count Three (aggravated identity theft), a two-year mandatory minimum term of imprisonment to run consecutive to any sentence imposed on any other counts, a one-year period of supervised release, a $250,000 fine, and a $100 special assessment. The total maximum and mandatory minimum sentence the defendant faces is 42 years' imprisonment, two years' mandatory minimum imprisonment, a three-year period of supervised release, a $750,000 fine, and a $300 special assessment.

### B. Sentencing Guidelines Calculation

The Probation Office correctly calculated the defendant's advisory guideline range as follows:

| **Guideline** | **Offense Level** | |
|---|---|---|
| Base Offense Level (USSG § 2B1.1) | **7** | |
| Specific Offense Characteristics - Loss (USSG § 2B1.1(b)(1)(I)) | **+16** | |
| Specific Offense Characteristics – Ten or More Victims (USSG § 2B1.1(b)(2)(A)) | **+2** | |
| Adjusted Level Subtotal | | **25** |
| Timely Acceptance of Responsibility (USSG § 3E1.1(a)-(b)) | **-3** | |
| Zero-point Offender Adjustment (USSG § 4C1.1(a)-(b)) | **-2** | |
| Total Offense Level Guideline | | **20** |

The government agrees that the defendant has no qualifying convictions, and that he has a criminal history category of I. The government further agrees that the defendant's Guideline range before the application of any mandatorily consecutive terms of imprisonment is 33 to 41

months' imprisonment, and that his total advisory Guideline range, which includes a mandatory consecutive sentence of 24 months' imprisonment for a conviction under 18 U.S.C. § 1028A, is 57 to 65 months' imprisonment.

The defendant has objected to the Probation Office not applying a mitigating role adjustment, which would trigger an additional two to four level decrease in his Sentencing Guideline calculation. The government agrees with the Probation Office that a mitigating role adjustment is not appropriate for the defendant based on his role in the conspiracy. The United States Sentencing Guidelines permits a two, three, or four level decrease in the Guideline calculation if a defendant is a minimal or minor participant in the criminal activity. USSG § 3B1.2. The Commentary to this Section notes that the mitigating role adjustment is based on the totality of circumstances and is heavily dependent on the facts of a particular case. USSG § 3B1.2, comment. n.3(C). It is the defendant's burden to show by a preponderance of the evidence that a mitigating role adjustment is supported by the facts of the case. *United States v. Wynn*, 108 F.4th 73, 80 (2d Cir. 2024) ("Because a mitigating role adjustment under §3B1.2 has the effect of reducing the defendant's otherwise-applicable Guidelines range, it is the defendant who bears the burden of establishing his entitlement to that reduction by a preponderance of the evidence.").

Application Note 3(A) states that the mitigating role adjustment exists for defendants who are substantially less culpable than others involved in the criminal activity. USSG § 3B1.2, comment. n.3(A). David Ray has not met his burden for this adjustment to apply, and it rightfully does not apply here. Every person involved in this conspiracy served an important and critical role with respect to its execution, and Ray is not less culpable than his co-conspirators. Ray sits alone, with no other similarly situated co-conspirators, for what his role meant to the conspiracy.

Ray was in charge of sourcing identities to be used in a money-making criminal conspiracy. Indeed, without his involvement, the conspiracy could not have operated or succeeded.

Ray argues that he did not know how exactly the identities were being used and that this makes him less culpable than his co-conspirators. It is undisputed, however, that he knew that the identities were being used criminally, and that the funds derived from the identities were used not just to make him whole, but to earn him six figures worth of income. His co-conspirator, Davison, served as the go-between between Ray and Alamoutinia, and Alamoutinia was responsible for filing the fraudulent applications in concert with Davison. All parties served their purpose, and all parties benefitted financially. The government is in agreement with the Probation Office's position that the Section 3B1.2 mitigating role adjustment is inapplicable here.

## III. ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the

history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

**A. Consideration of the 3553(a) Factors Regarding Imprisonment**

The defendant engaged in a serious white collar offense – indeed one that without his agreement and participation, could not have been completed. The entire conspiracy in which the defendant participated, while not devised by him, was wholly contingent on his ability to access and abuse information which sat at his fingertips. In May 2020, shortly after the pandemic was declared, Ray accessed the identities of 375 of his co-workers, and provided these identities to his internet paramour, co-defendant Aryanah Davison. The identities of Ray's innocent co-workers were then used by his co-conspirators to defraud the United States government of nearly $3,000,000 of federal funds earmarked to provide stability and a source of income to Americans directly affected by the pandemic lockdown restrictions. While Ray's participation resulted in a loss to the government, what is particularly egregious about his actions in the conspiracy is who he victimized in furtherance of love and affirmation from Davison.

David Ray up to this point had a successful and stable career in the trucking industry, and while his explanation of loneliness and addiction can provide color to why he took the path that

he did, it cannot excuse his behavior. When life got tough, David Ray sold out his co-workers and friends – and earned over $144,000 doing it. The defendant knew better.

The nature and characteristics of the defendant paint a picture of a person who knew he was doing wrong, and did it anyway. The defendant explains in detail how he was manipulated by his co-defendants, which very likely to some degree occurred here, and that he was particularly vulnerable to Davison due to addiction and loneliness he was suffering at the time. What is also evident, however, is that the defendant was also positioned stop this fraud, and did not. The defendant argues in his sentencing motion that he was the victim of a romance scam, which caused him to purchase vehicles and empty his bank accounts. Def. Sent. Memo 2-3. Notwithstanding the fact that Ray made a decision to join the chat site before he ultimately met Davison, the timeline of this case reveals that Ray had been in an internet “relationship” with Davison for months before these criminal offenses began. His statements to the United States Probation Office reflect not someone blindly being led by the months-long unfulfilled promises of love and affection from Davison, but rather someone who was knowing, aware, and after repeated lies from Davison about meeting up, was “pretty much pissed at that point.” PSR ¶ 26. It bears consideration how much Ray was being led, versus wanting to be led by Davison throughout his involvement with her.

His crimes fall squarely within the class of cases to which the applicable guidelines are addressed, and thus consideration of the nature of the offense, § 3553(a)(1), counsels in favor of a meaningful sentence. It is clear that the recommended term of imprisonment is required “to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.” § 3553(a)(2). Furthermore, the recommended sentence of

incarceration affords adequate deterrence to others who would commit a similar offense, and protects the public from further crimes of the defendant.

In addition, adherence to the recommended guideline range assures that the defendant's sentence is consistent with those imposed nationwide on similarly situated offenders, and thus complying with Section 3553(a)(6) and avoiding undue disparity.

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a)(2)(D). While restitution is an issue in this case, the recommended term of supervised release is sufficient to ensure outstanding restitution is timely paid. § 3553(a)(7).

**B. <u>Supervised Release</u>**

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to

promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of three years is warranted. Close supervision following release from imprisonment is warranted to aid his reentry to society and to protect the public. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), protect the public, § 3553(a)(2)(C), assure that the defendant continues to pursue education and vocational efforts that promote rehabilitation, § 3553(a)(2)(D), and pays restitution to victims, § 3553(a)(7).

## IV. CONCLUSION

For these reasons and subject to any that may be presented at the defendant's sentencing hearing and in the Sealed Supplement, the government believes that a sentence that fully accounts for the scope and severity of the defendant's criminal conduct is appropriate in this case.

Respectfully submitted,

DAVID METCALF
United States Attorney

S. CHANDLER HARRIS
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Brian Getz, Esq.
Counsel for David Ray

S. CHANDLER HARRIS
Assistant United States Attorney

DATED: October 28, 2026.